UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

UNITED STATES OF AMERICA,
    *v.*
EVAN J. COSSETTE,
    *Defendant.*

Criminal No. 3:12cr232 (JBA)

September 18, 2013

RULING ON DEFENDANT'S POST-TRIAL MOTION

Defendant Evan J. Cossette moves [Doc. # 65] pursuant to Federal Rule of Criminal Procedure 29 for judgment of acquittal. For the following reasons, Defendant's motion is denied.

I.    Summary

Following a four-day trial, a jury returned a verdict convicting Defendant Cossette of Deprivation of Rights in violation of 18 U.S.C. § 242 and Obstruction of Justice in violation of 18 U.S.C. § 1519.

Pre-trial, Defendant Cossette moved [Doc. # 25] to dismiss the Indictment [Doc # 1], arguing that its allegations were legally insufficient to sustain a charge under § 242, because there was no fair notice that his use of force as a police officer against an arrestee was in violation of clearly established law.[1] The Court orally denied [Doc. # 39] Cossette's motion on April 30, 2013, but invited Defendant to renew the substance of his argument at the conclusion of the evidence. (*See* Order on Pre-Trial Motions [Doc. # 39] ¶ 1.) At the close of the Government's case-in-chief, Defendant moved [Doc. # 48] for a judgment of acquittal based on the same fair-notice arguments, which the Court denied [Doc. # 49],

---

[1]     The Indictment alleged in relevant part: "[A]t the Meriden Police Department, COSSETTE escorted a compliant and handcuffed P.T. from the squad car to the holding cell. Once inside the holding cell, COSSETTE firmly shoved the compliant and handcuffed P.T., causing P.T. to fall backwards and strike his head on a cement cell bench. P.T. suffered a deep cut and trauma to his head that required medical attention." (Indictment ¶¶ 4–5.)

without prejudice to renewal at the close of evidence. Defendant now renews his motion for judgment of acquittal pursuant to Rule 29 "based upon insufficient evidence to support the fair notice requirement" and renews his motion to dismiss the Indictment, arguing that his knowledge that "excessive force" is prohibited is insufficient to give him notice that his specific conduct here was subject to criminal prosecution under § 242. (Def.'s Mem. Supp. [Doc. # 65] at 1, 3; Reply [Doc. # 68] at 2.)

II. Legal Standard

"A Rule 29 motion [for a judgment of acquittal] should be granted only if the district court concludes there is no evidence upon which a reasonable mind might fairly conclude guilt beyond a reasonable doubt." *United States v. Irving*, 452 F.3d 110, 117 (2d Cir. 2006) (internal quotation marks omitted). "A defendant challenging the sufficiency of the evidence that was the basis of his conviction at trial bears a heavy burden." *United States v. Hawkins*, 547 F.3d 66, 70 (2d Cir. 2008) (internal quotation marks and citations omitted). The Court must view the evidence presented at trial in the light most favorable to the Government, draw all reasonable inferences in its favor, *see United States v. Cote*, 544 F.3d 88, 98 (2d Cir. 2008), and not "substitute its own determination of . . . the weight of the evidence and the reasonable inferences to be drawn for that of the jury.'" *Id.* at 99 (alteration in original) (quoting *United States v. Guandagna*, 183 F.3d 122, 129 (2d Cir. 1999)). "The Court must give full play to the right of the jury to determine credibility." *Id.*

III. Discussion

A. Count One: 18 U.S.C. § 242

Defendant maintains that he did not have fair warning that his conduct could give rise to prosecution "no matter how unreasonable the force may be." (Def.'s Mem. Supp.

at 3.) The evidence of force supporting the conviction for deprivation of rights was largely the video of Defendant escorting the victim-detainee from the patrol car into the holding cell. It showed that as Defendant walked the handcuffed, compliant, and intoxicated suspect into the police department holding cell, he forcefully pushed the suspect backwards, causing him to fall and strike his head, resulting in injury and temporary unconsciousness.

The conduct prohibited by § 242 is defined by reference to Constitutional principles, statutes, and their judicial application:

> Whoever, under color of any law, statute, ordinance, regulation, or custom, willfully subjects any person . . . to the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the United States . . . and if bodily injury results from the acts committed in violation of this section . . . shall be fined under this title or imprisoned not more than ten years, or both. . . .

18 U.S.C § 242.

It is axiomatic that the right to due process requires that "no man shall be held criminally responsible for conduct which he could not reasonably understand to be proscribed." *United States v. Lanier*, 520 U.S. 259, 265 (1997) (internal quotation marks omitted). In *Screws v. United States*, 325 U.S. 91, 105 (1945), the Supreme Court recognized that a broad interpretation of § 242 could violate that mandate. "At the same time, the same Justices recognized that this constitutional difficulty does not arise when the accused is charged with violating a 'right which has been made specific either by the express terms of the Constitution or laws of the United States or by decisions interpreting them.'" *Lanier*, 520 U.S. at 267 (quoting *Screws*, 325 U.S. at 104). When the rights protected by the Constitution "have been 'made specific' by the text or settled interpretations, willful violators 'certainly are in no position to say that they had no

3

adequate advance notice that they would be visited with punishment. . . . [T]hey are not punished for violating an unknowable something.'" *Id.* (alterations in original) (quoting *Screws*, 325 U.S. at 105). "Accordingly, *Screws* limited the statute's coverage to rights fairly warned of, having been 'made specific' by the time of the charged conduct." *Id.*

Thus, § 242 can only apply to Defendant if he had fair warning that his actions were a violation of the victim-detainee's Fourth Amendment right to be free from excessive force. To determine whether such fair notice existed, the Court looks to "(i) whether the right at issue was defined with reasonable clarity; (ii) whether the Supreme Court or the Second Circuit had affirmed the existence of the right; and (iii) whether reasonable police officers in [Defendant's] position would have understood from the existing law that [his] conduct was unlawful." *Townes v. City of New York*, 176 F.3d 138, 144 (2d Cir. 1999). This analysis is the same as the one to determine if a constitutional right is "clearly established" for purposes of determining civil liability under 42 U.S.C. § 1983.[2] *Hope v. Pelzer*, 536 U.S. 730, 739–40 (2002) ("In [*Lanier*], we held that the defendant was entitled to 'fair warning' that his conduct deprived his victim of a constitutional right, and that the standard for determining the adequacy of that warning was the same as the standard for determining whether a constitutional right was 'clearly established' in civil litigation under § 1983.")

There is no requirement that "the very action in question has previously been held unlawful, but it is to say that in the light of pre-existing law the unlawfulness must be

---

[2] Criminal liability for deprivation of such rights can be imposed only if a defendant has acted willfully—an element not required to impose civil liability under § 1983. *See United States v. Walsh*, 27 F. Supp. 2d 186, 191 (W.D.N.Y. 1998) ("What distinguishes 18 U.S.C. § 242 actions from 42 U.S.C. § 1983 actions is the state of mind requirement—a defendant must act 'willfully' in order to violate [§ 242]." (citing *Monroe v. Pape,* 365 U.S. 167, 187 (1961))).

apparent." *Anderson v. Creighton*, 483 U.S. 635, 640 (1987). In *Lanier*, the Supreme Court rejected the argument that the factual circumstances of a constitutional deprivation charged under § 242 must be "fundamentally similar" to those of a precedent applying that right. *See* 520 U.S. at 269. Instead, the Court noted that it had upheld convictions under § 242 "despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Id.* Under *Lanier*, "officials can still be on notice that their conduct violates established law even in novel factual circumstances." *See Hope,* 536 U.S. at 741.

It is "well established that the use of excessive force in the course of an arrest is constitutionally prohibited." *Mickle v. Morin*, 297 F.3d 114, 122 (2d Cir. 2002). The exact circumstances under which such physical force is employed need not have been litigated to provide notice that this conduct may be unconstitutional. For example, in *United States v. Praisner*, No. 3:09-CR-264 (MRK), 2010 WL 2574103, at *1 (D. Conn. Apr. 27, 2010), two police officers were charged under § 242 for their treatment of a suspect who had been arrested recently on misdemeanor trespassing charges and secured in a temporary holding cell at the stationhouse. The officers were aware that the suspect had a pulmonary condition yet after he began to demand an attorney and kick the walls of his cell, the defendants pepper sprayed him. *Id.* The suspect then became compliant and repeatedly asked for help, but the defendants did not decontaminate him and instead sprayed him again—a total of six times on four separate occasions over the course of forty minutes. *Id.* Before trial, the officers moved to dismiss the indictment, arguing that "they were not on notice that their particular conduct in this case—and specifically the use of pepper spray—could amount to excessive force . . . . because courts have

5

specifically upheld the use of pepper spray as a reasonable use of force in certain circumstances." *Id.* at *3.

The court noted that although "[n]either the Second Circuit nor the Supreme Court has ruled on the constitutionality of the use of pepper spray in circumstances factually similar to this case, . . . reasonable police officers would certainly understand that force can be excessive no matter the mechanism employed. A police officer could not beat a cooperative suspect with a chair and then plausibly argue that he did not know that such conduct was unconstitutional because no court had ever specifically decided that beating with a chair amounts to excessive force." *Id.* While acknowledging that the use of pepper spray was perfectly appropriate in some circumstances, the court found that the defendants' argument "misses the point," because "the question is whether it is clearly established that the use of pepper spray *in the manner alleged in the Indictment* . . . is excessive force. Just because a tool has legitimate law enforcement purposes does not mean that it cannot be used in a manner that constitutes excessive force. Context matters." *Id.* When the defendants renewed their motion post-mistrial, the court again denied it, noting that under their "logic few crimes could ever be punished because the facts of every individual case are different." *Praisner*, 2010 WL 4024779, at *3 (D. Conn. Aug. 17, 2010).

Defendant here advances a similarly flawed argument, asserting that he was not on fair notice that his use of physical force could subject him to criminal liability under § 242, because "[t]here are no prior cases holding that a single push to an intoxicated arrestee may amount to excessive force."[3] (Def.'s Mem. Supp. [Doc. 65] at 7.)

---
[3] The Government contends that Defendant's "fair notice" argument is "an attempt to re-litigate his earlier motion to dismiss" the Indictment under Rule 12(b)(3)(B) for legal insufficiency, and is not properly before the Court on a Rule 29 motion. (*See* Gov.'t's Mem.

6

Notwithstanding the jury's verdict finding that he used excessive force under the circumstances proved, Defendant maintains that he did not have adequate notice that his conduct could subject him to criminal prosecution.[4] (*See id.* at 3.) Defendant's arguments are unavailing, because § 242 does not require such congruity between his conduct and prior cases in order to put him on notice that forcefully pushing a compliant, submissive arrestee backwards and causing him physical injury could subject a police officer to criminal liability under § 242. While "[t]he contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right," *Anderson*, 483 U.S. at 640, as discussed above, the exact factual scenario need not have been previously adjudicated to provide fair warning.

Reasonable police officers would understand that the use of force alleged in the Indictment was excessive. As Defendant testified, he received training in the police

---

in Opp. [Doc. # 66] at 15.) In denying Defendant's earlier motion, the Court did not prohibit Defendant from reasserting this argument after the close of evidence, and in the instant motion, Defendant has expressly renewed the motion to dismiss the Indictment despite captioning the motion as one under Rule 29. (*See* Def.'s Mem. Supp. at 3.) The Court may consider a claim that an indictment "fails to invoke the court's jurisdiction or to state an offense" at any time while a case is pending. Fed. R. Crim. P. 12(b)(3)(B). Accordingly, the Court will consider the legal sufficiency of the Indictment.

[4] The gravamen of Defendant's argument appears to be a mixture of legal and factual contours: that the facts proven at trial do not describe a clearly established constitutional violation punishable under § 242. Under this argument, the Indictment was legally deficient and should be dismissed despite the jury verdict. Defendant does not explicitly make the related argument that, even assuming the Indictment adequately alleged a constitutional deprivation, there was insufficient evidence to support the jury's verdict, which necessarily found that Defendant's use of force was willful and objectively unreasonable under the circumstances. Defendant does suggest as much in his fair-notice discussion, however (*see, e.g.,* Def.'s Mem. Supp. at 6 ("The Government presented no testimony to refute Officer Cossette's logical explanation that as Temich was being placed in the cell he spun away from Officer Cossette.")), and thus the Court will also consider the sufficiency of the evidence.

academy regarding the proper use of force. Specifically, Defendant was trained to "gauge each specific situation on its own merit and determine what's necessary" in terms of the use of force, which can range "from verbal commands to using your hands to fighting with people to firearms," and "a variety of different less lethal options, such as" the use of "pepper spray, [a] Taser, [or a] baton." (Tr. of Testimony of Evan Cossette ("Cossette Tr.") [Doc. # 54] at 9; *see also id.* at 73.) Thus, officers like Defendant trained on the proper use of force know that the force they use is determined by the circumstances they encounter.[5] Accordingly, whether Defendant's "single shove" was excessive was for the jury to decide in the full context of how that force was used.

The Government's central evidence at trial on the § 242 count was the video showing Temich walking forward and then backwards into the cell. Defendant claims that this video shows the reasonableness of his belief that Temich "spun" away to escape or attack him.

This video was relevant to the two elements of § 242 that were disputed at trial: unreasonable force and willfulness.[6] In its charge on the first of these elements—deprivation of the right to be free from Defendant's use of unreasonable force—the Court instructed the jury:

---

[5] Such officers also know that the use of excessive force could subject them to federal criminal liability under § 242. Sgt. John Mennone, an instructor in the use of force for the Meriden Police Department, confirmed that new officers are "made aware of the possibility of, specifically, federal criminal liability, among other liability, for civil rights violations." (Tr. of Testimony of John Mennone ("Mennone Tr.") [Doc. # 53] at 105.)

[6] To convict, the jury also had to find that Defendant acted under color of law and caused bodily injury to Temich. *See United States v. Livoti*, 196 F.3d 322, 327 (2d Cir. 1999). Defendant does not contest these two elements.

8

> [Y]ou must determine whether the defendant used more than an amount of force reasonably necessary to accomplish a legitimate law enforcement purpose such as holding Mr. Temich in custody, preventing his escape, or defending himself or another against bodily harm. In making this determination, you should consider all the circumstances from the point of view of an ordinary and reasonable officer on the scene at that time. . . . [Y]ou should pay particular attention to the facts and circumstances of this particular case, including the severity of the crime Mr. Temich was charged with, whether Mr. Temich posed an immediate threat to the safety of the defendant or others, and whether, at the time force was used, Mr. Temich was actively resisting arrest or attempting to evade arrest by flight.

(Jury Instructions [Doc. # 55] at 14). On the willfulness element, the Court instructed the jury that the Government had to prove that Defendant acted "voluntarily and intentionally, and with the specific intent . . . to deprive Mr. Temich of . . . the right to be free from [the] use of unreasonable force." (*Id.* at 15.)

Defendant testified that he believed Temich was attempting to escape or attack him, and thus, under the circumstances, the force he employed was reasonable. He testified that as they were walking into the holding cell:

> Mr. Temich, he pulls away from me hard and fast. He pulls away, spins, and he's facing me and we're face-to-face with each other. . . . I hold my left hand out, I tell him, "Get back, get back, get back." . . . He and I were getting closer and closer to each other . . . I feel his body tense up and I see his head drop. At that point I thought he was going to head butt me or do something. He had the same look in his face like before where he didn't want to get in the car, and I just—I thought he was going to do something at that point, so I just gave him a firm push back.

(Cossette Tr. at 45–46.) Contrary to Defendant's testimony, the Government used slow motion and still shots from the video to show that Temich was compliant while he exited the patrol car, walked through the sally port into the police station, and as he entered the holding cell. (*See* Tr. of Closing Arguments [Doc. # 70] at 54–55.) According to the Government's version of the video, Temich did not spin forward as Defendant claimed,

9

but instead took "four steps backwards before he gets pushed." (*Id.* at 57.) The Government also argued that Defendant's demeanor on the footage showed his "complete lack of concern" that Temich might pose a threat to him. That Temich was rear handcuffed and the "overwhelming size difference" between the two—Defendant was 6'1" and 230 pounds while Temich was at least a foot shorter and 75 pounds lighter—contradicted Defendant's claim that the seemingly compliant Temich could really pose a threat or would be capable of head butting him. (*Id.* at 56.)

Further, the Government argued that although the video camera did not record audio, the footage and other evidence were inconsistent with Defendant's claim that he ordered Temich to step back three times in the "one or two seconds" between when Temich turned around and when he was pushed. (*Id.* at 71.) First, the Government argued that there was "no way at all, common sense-wise, that he would have time to say all of those things in [that] period of time." (*Id.*) Second, the Government noted that Sgt. Mennone testified that he was in a room about 15 to 20 feet away from the holding cells at the time of the incident and did not hear Defendant make these commands. (*Id.* at 71; *see also* Mennone Tr. at 118–19.) On direct examination, Sgt. Mennone was equivocal about whether he would have been able to hear Defendant issue these commands from where he was standing. (Mennone Tr. at 118–19.) On cross examination, however, the Government sought to impeach Sgt. Mennone with his grand jury testimony in which he stated that from where he was standing he "[s]urely" would have been able to hear "if there was loud yelling or if there was an argument or a dispute or a fight going on outside the temporary holding cell."[7] (*Id.* at 133–34.)

---

[7]

    In its closing, the Government suggested that Sgt. Mennone changed his testimony at trial, because he was "testifying under the watchful eye of the [Meriden Police] chief," Defendant's father. (Closing Arguments Tr. at 71.)

10

From the evidence discussed above, it is clear that there was sufficient evidence for a reasonable jury to conclude that Defendant with his push used force against Temich resulting in physical injury that was not justified under the circumstances. The police video footage showed a compliant Temich being pushed seemingly without any provocation. The jurors reasonably discredited Defendant's testimony at trial that he acted in self-defense after Temich spun away from him while being placed in the cell, and instead concluded that Defendant willfully used gratuitous and unreasonable force resulting in physical injury in a situation that did not justify it. From both the evidence and the Indictment's description of the force used, the Court concludes that Defendant was on fair notice that the manner of force alleged in the Indictment was unconstitutional and that the trial evidence of the actual circumstances surrounding the use of force was sufficient for reasonable jurors to conclude beyond a reasonable doubt that Defendant's conduct constituted a violation of § 242 as charged. Accordingly, Defendant's motion for acquittal and to dismiss the Indictment as to Count One is denied.

II.  Count Two: 18 U.S.C. § 1519

Defendant also contends that his conviction under § 1519 for drafting an official police report falsely describing the circumstances of Temich's injury cannot stand, because at the time he drafted the report, there was no "investigation ongoing or one reasonably anticipated." (Def.'s Mem. Supp. at 11.) Derivative of his arguments regarding Count One, Defendant maintains that he "could not have intended to [obstruct] or impede an investigation," because there was no fair notice that his conduct violated § 242, and thus he "could not have reasonably . . . anticipated" that an investigation was forthcoming. (*Id.* at 12.) This argument is foreclosed by *United States v. Gray*, 642 F.3d 371, 378–79 (2d Cir. 2011), in which the Second Circuit held that unlike

11

other obstruction statutes, "[b]y the plain terms of § 1519, knowledge of a pending federal investigation or proceeding is not an element of the obstruction crime," and the statute "does not require the existence or likelihood of a federal investigation."

In accordance with *Gray*, the jury was instructed that the Government was "only required to prove that the defendant acted in contemplation of a potential investigation" and not that he "knew his conduct would impede, obstruct, or influence an ongoing or potential federal investigation of a matter" or that such "an investigation was ongoing or imminent at the time the defendant acted." (Jury Instructions at 19.) To the extent that Defendant argues that § 1519 requires the Government to also prove his knowledge that a false report could obstruct "the investigation or proper administration of any matter within the jurisdiction" of the Department of Justice, his testimony does so, as he acknowledged at trial that it was "common knowledge amongst police officers that if they use excessive force . . . the FBI might investigate it." (Cossette Tr. at 72); *see also Gray*, 642 F.3d at 379 ("There was an ample basis to conclude that the defendants, as officers at a facility that housed federal prisoners, were aware of the DOJ's policy of investigating allegations of excessive force at [the facility].").

Defendant also argues that there was insufficient evidence to support his conviction on this count, because Defendant acknowledged in his police report that he gave Temich a "firm push," and, thus, he made "no effort to hide the amount of force utilized." (Def.'s Mem. Supp. at 12.) He further argues that his "recording of his perception" that his conduct was justified by self-defense demonstrates the insufficiency of the evidence of his intent to create a false report. (*Id.*) As the jury was instructed, however, "defendant falsifies a document by knowingly including within the document any untrue statement or representation or by knowingly omitting from the document any

material fact." (Jury Instructions at 18.)  A reasonable jury could have concluded that while Defendant described giving Temich a "firm push," the report was nevertheless intentionally not truthful regarding the critical issue of the circumstances under which the "firm push" and resulting injury occurred.  Defendant's report stated that Temich "remained uncooperative and immediately spun around when I placed him in the cell," and that he ordered Temich to get back three to four times before pushing him.  Notwithstanding Defendant's testimony that the camera angle obscured aggressive actions by Temich, a reasonable jury readily could have rejected Defendant's explanation for why the video instead showed only Temich's acquiescence and concluded that Defendant intentionally and falsely described Temich as the aggressor in order to cover up his use of excessive force.  Accordingly, Defendant's motion for acquittal on Count Two is denied

I. Conclusion

For the reasons set forth above, Defendant's motion [Doc. # 65] for judgment of acquittal is DENIED.

                                IT IS SO ORDERED.

                                /s/
                                Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 18th day of September, 2013.